## SHERMAN v. McENTIRE.

No. 7004.  Decided April 22, 1947.  (179 P. 2d 796.)

See 48 C. J. Physicians and Surgeons, Sec. 72; 1 Am. Jur. 137-8. Pregnancy as element of offense of attempt to procure a miscarriage, note, 10 A. L. R. 314.

*Arthur H. Nielsen* and *F. Ray Brown,* both of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Calvin Rampton,* of Salt Lake City, for respondent.

WADE, Justice.

This is an appeal from a judgment of the Third Judicial District Court affirming an order of the Director of the

Department of Registration of the State of Utah revoking appellant's license to practice medicine within this state.

On a complaint filed with the Department of Registration, appellant was accused of being guilty of "unprofessional conduct" as defined in Sec. 79-9-18, U. C. A. 1943, in that he advised a certain woman that she was pregnant; that she could not successfully bear a child and that she could be treated only by the performance of an abortion which he proposed to perform, whereas in fact said woman was a normal woman and could in fact successfully give birth to a child. The above section in so far as is material here reads as follows:

"The words 'unprofessional conduct' as relating to the practice of medicine, or any other system of treating human ailments, or the practice of obstetrics, are hereby defined to include:
"(1)   Procuring, or aiding in or abetting or offering or attempting to procure or aid in or abet the procuring of, a criminal abortion."

A hearing was held before a Board of Physicians on the complaint against appellant and the Board found him guilty of "unprofessional conduct" and recommended that his license to practice medicine be revoked. From the order of the Director of Registration revoking his license, appellant herein appealed to the District Court wherein the matter was tried anew.

In the trial before the District Court evidence was introduced by way of depositions of the complaining witnesses, a young married couple, that appellant was consulted by them to determine whether the wife was pregnant. That after he examined her he advised them that he was unable to tell whether she was pregnant but that he would give her a test consisting of a series of three daily injections which would enable him to definitely determine her condition. He advised her that because of her physical build if the test proved she was pregnant he would perform an abortion on her because she would not be able to successfully give birth to a child. The young wife submitted to the injections for two successive days and then did not visit appellant again. In the meantime, the husband who was serving in the army

and stationed at Camp Kearns, which was near Salt Lake City, spoke to the medical officer there about his wife's condition and this officer advised him to take her to Dr. McLennan, at that time a professor of Obstetrics and Gynecology at the University of Utah Medical School. This the husband did and Dr. McLennan examined the wife. From this examination it was the opinion of Dr. McLennan that although it was impossible to be certain at that time, there was no physical appearance of pregnancy, but that in the event that she should be pregnant there was no physical malformation which would prevent her bearing a child to a successful birth. Later it was learned that the wife was not pregnant at the times she consulted appellant and Dr. McLennan.

Appellant denied that he had offered to perform an abortion on the wife although she had requested it and in corroboration of his testimony he introduced a deposition of a witness who said she was listening outside the doctor's door at the time the complaining witness was consulting him and that she heard the conversation between the doctor whom she knew and whose voice she recognized and a woman unknown to her; that this woman was asking the doctor to perform an abortion on her but that he refused. The court as the trier of the facts evidently chose not to believe this witness as it affirmed the order of the Director of the Department of Registration revoking appellant's license to practice medicine.

It is appellant's contention that even if all the evidence adverse to him were taken as true, that nevertheless, the facts so proved were insufficient upon which to find him guilty of "unprofessional conduct," since it was definitely established that the woman was not pregnant at the time the purported offer to commit an abortion was made and that unless she were pregnant at that time it would have been impossible to procure, aid or abet or offer or attempt to procure a criminal abortion upon her.

As to what constitutes a criminal abortion we have to look to Sec. 103-2-1, U. C. A. 1943, which defines what is a criminal abortion. That section reads:

"Every person who provides, supplies or administers to any *pregnant* woman, or procures any *such* woman to take, any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of *such* woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than ten years." (Emphasis ours.)

It will be noted that under the provisions of this statute a material element in the crime of abortion is the pregnancy of the woman. Respondent admits that a person cannot be convicted of abortion unless the woman upon whom the crime is attempted or performed is pregnant at that time, but argues that the proceeding to revoke appellant's license is not a criminal proceeding and that he was not accused of having committed a criminal abortion but only with attempting to procure the commission of a criminal abortion. That in an attempt to commit a crime it is not necessary that all elements exist which would permit the execution of the crime provided the person being charged was not aware that the crime was impossible of completion. Respondent cites 22 C. J. S., Criminal Law, § 77, page 142 and *People* v. *Browning,* 132 Cal. App. 136, 22 P. 2d 784, in support of this contention. Unfortunately these citations are not in point under the facts of the instant case. The undisputed facts disclose that appellant did not know and was undecided as to whether the woman was pregnant but proposed to give her injections to determine that fact and if the effect of these injections proved she was pregnant he offered to commit an abortion on her. This is not a case where an attempt to commit a crime is made but which crime could not be committed because of some fact unknown to the person attempting to commit the crime. In *People* v. *Browning,* supra, the woman was actually pregnant, and where this is so, it was held that as to the proof of the intent to commit a crime it is not necessary to prove that the person accused of the crime absolutely knew that the woman was pregnant. It is enough if the accused believed or suspected it to be the fact.

Respondent has not cited nor have we been able to find any case where under a statute similar to ours it has been held that it is not necessary that pregnancy be proved in order to find an accused guilty of a criminal abortion or of an attempt to commit that crime. If under a statute such as ours there can be no criminal abortion or attempt to commit such crime unless the woman is pregnant can it be said that the offer to perform such act upon a woman who is not pregnant is sufficient to prove a doctor guilty of "unprofessional conduct" whereas an overt act looking to the committing of such a crime upon a woman whom it was later proved was not pregnant would not be? We think not.

Since the "unprofessional conduct" of which appellant is accused is the offering to procure an abortion and since the proof is uncontroverted that the offer was made to a woman who was not pregnant there was insufficient proof to find the appellant guilty of the offense charged.

For cases which have held that where pregnancy is a material element in the crime of abortion a physician's certificate to practice may not be revoked for aiding, attempting or performing a criminal abortion unless pregnancy is proved, see *Lanterman* v. *Board of Medical Examiners,* 4 Cal. App. 2d 319, 40 P. 2d 913, and *State* v. *Brown,* 218 Iowa 166, 253 N. W. 836. It is interesting to note that at the time the case of *Lanterman* v. *Board of Medical Examiners,* supra, was decided. California had a statute similar to ours in which it was required that in order for an accused to be guilty of criminal abortion the woman must have been pregnant, but that a few years after this case was decided the Legislature amended its statute defining criminal abortion, and it now no longer requires that the acts be committed on a pregnant woman.

Reversed and remanded with instructions that the order revoking appellant's certificate to practice medicine be annulled.

McDONOUGH, C. J., and PRATT, WOLFE, and LATIMER, JJ., concur.