James Edgar EAVES, Appellant,

v.

**BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 89–1484.

Supreme Court of Iowa.

March 20, 1991.

Nick Critelli and Lylea Dodson Critelli of Nick Critelli Associates, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN and SNELL, JJ.

CARTER, Justice.

Dr. James Eaves appeals from an order upholding the Board of Medical Examiners' decision imposing discipline for excessively prescribing controlled drugs. The suit is one for judicial review of agency action under Iowa Code section 17A.19 (1989).

The Board filed a complaint and statement of charges against Eaves on January 22, 1987. The complaint alleged that he "prescribed excessive doses of scheduled drugs to seven different patients when such drug therapy was not medically indicated." The Board charged that such conduct violated Iowa Code sections 147.55(3) and 148.6(1)(g) (1987) and 470 Administrative Code 135.204(13) (1987)[1].

Both Eaves and the State presented evidence at the hearing before the three-member panel. There was evidence that the Iowa Medical Society has advised its members since at least 1983 not to phone in prescriptions for scheduled drugs to the emergency room, as Eaves did for some of these patients. The State's witness testified that narcotic pain medication should not be used for long-term treatment in the absence of a terminal disease. Eaves himself testified to concern over the extended use of narcotics for at least one of these patients. Patient No. 1 was treated for substance abuse after Eaves' year-long prescription of Demerol. Eaves prescribed scheduled drugs for Patient No. 7 while he was in the care of another physician who refused to make such prescriptions.

Other evidence, when viewed most favorably to the Board's findings, indicated the following. All seven of the patients suffered from chronic pain. Eaves prescribed Demerol as well as Butalbital, Codeine, and other drugs to each of them for more than a year. Patient No. 1 received Demerol injections for migraine headaches and other

complaints between October 1983 and October 1984. Eaves prescribed forty-five of the seventy injections by telephone to the emergency room without physical examination.

Patient No. 3 received prescriptions for various controlled drugs from January 1985 to April 1986 for chronic pain of the right shoulder. Patient No. 5 had chest pain, low back pain, neck pain, and migraine variant. Eaves prescribed 2162 doses of Tylenol IV from January 1985 through May 1986. Patient No. 6 (married to Patient No. 5) had chronic phlebitis of the left leg. Eaves prescribed 1734 doses of Tylenol III between January 1985 and May 1986.

Patient No. 7 was being treated for migraine headaches. Eaves prescribed scheduled and nonscheduled drugs to him between December 1983 and April 1986. He prescribed Demerol and Vistaril for injection in the emergency room after Patient No. 7 had, against medical advice, checked out of another hospital because he could not receive the injections there.

Eaves filed a motion to dismiss which was overruled by the Executive Director. A three-member hearing panel considered the charges on June 7, 1988. That panel found that Eaves violated Iowa Code sections 147.55(3) and 148.6(1)(g) and 470 Iowa Administrative Code 135.204(13) with respect to five of the seven patients in issue. Eaves was found not to have prescribed excessive doses of scheduled drugs for Patients No. 2 and No. 4. The panel imposed a three-year probation under terms which required payment of a $1000 fine, additional medical education, prohibition against continued prescription of addictive drugs for chronic pain, and submission of new treatment plans for his patients.

Eaves unsuccessfully appealed to the Board. The Board's final decision, issued on October 26, 1988, affirmed the decision of the hearing panel. On judicial review, the district court affirmed the decision of the Board. Eaves now appeals from that

1. This rule is now found at 653 Iowa Administrative Code 12.4(13) (1990).

decision raising four issues which we discuss separately.

## I. *Unconstitutional Vagueness.*

■ Eaves asserts that the provisions which he was found to have violated are unconstitutionally vague. The specific language challenged is: "Knowingly ... engaging in ... practice harmful or detrimental to the public" in Iowa Code section 147.55(3) and "departure from, or the failure to conform to, the minimal standard of acceptable and prevailing practice of medicine" in Iowa Code section 148.6(1)(g) and 470 Iowa Administrative Code 135.204(13). These provisions constitute the Board's grounds for imposing discipline on Eaves.

A civil statute is unconstitutionally vague under the due process clause when its language does not convey a sufficiently definite warning of proscribed conduct, as measured by common understanding or practice. When persons must necessarily guess at the meaning of a statute and its applicability, the statute is unconstitutionally vague. A presumption of constitutionality exists which must be overcome by negating every reasonable basis on which the statute can be sustained.

Literal exactitude or precision is not necessary. If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints against judicial legislation, the statute must be interpreted in that way. *Knepper v. Monticello State Bank,* 450 N.W.2d 833, 838 (Iowa 1990) (citing *Greenawalt v. Zoning Bd. of Adjustment,* 345 N.W.2d 537, 545 (Iowa 1984)); *see also State ex rel. Iowa Dep't of Health v. Van Wyk,* 320 N.W.2d 599, 605 (Iowa 1982) (statutory scheme regulating chiropractors not unconstitutionally vague).

We have recognized in regulating certain matters "a degree of indefiniteness is necessary to avoid unduly restricting the applicability of the [proscribing] rule." *Pottawattamie County v. Iowa Dep't of Envtl. Quality,* 272 N.W.2d 448, 453 (Iowa 1978). Regulation of the medical profession requires flexibility. As the Oregon Supreme Court has recognized, in enforcing professional responsibility, "[t]he limits between good and bad professional conduct can never be marked off by a definite line of cleavage." *In re Mintz,* 233 Or. 441, 448, 378 P.2d 945, 948 (1963). It would be impossible to catalog all the types of professional misconduct. *Id.*

We believe the language of the statutes Eaves challenges gives sufficient notice to doctors that they must perform in a minimally competent manner. The enforcement mechanism is in essence a statutorily prescribed peer review. The Board has the authority under the challenged provisions to impose discipline for "harmful practices" based on findings of fact of a failure to meet the minimal standards of acceptable medical practice. *See, e.g., Strigenz v. Department of Regulation & Licensing,* 103 Wis.2d 281, 289–91, 307 N.W.2d 664, 669 (1981).

## II. *Combination of Administrative Functions.*

■ Eaves next argues that the Executive Director of the Board impermissibly combined functions by (1) acting as prosecutor in filing the original complaint against Eaves, and (2) acting as adjudicator in later overruling Eaves' motion to dismiss. Iowa Code section 17A.17(3) prohibits individuals who prosecute a contested case from participating in the making of any decision.

"[A]n unconstitutional combination of prosecutory and adjudicative functions may occur where the individual who is responsible for presenting one party's case to a decisionmaker also acts as decisionmaker." *Wedergren v. Board of Directors,* 307 N.W.2d 12, 18 (Iowa 1981). That has not occurred here. As in *Hartwig v. Board of Nursing,* 448 N.W.2d 321, 324 (Iowa 1989), the actual prosecution of this case was handled by the Attorney General's Office, not by the agency. The circumstances do not support a determination that the agency has improperly prejudged the case. *See id.*

The Executive Director was not involved in the prosecution of the complaint. Filing

the original complaint is a ministerial act, not prosecutorial conduct. No individual who acted as advocate for either party participated in the decision making.

### III. *Burden of Proof.*

Eaves asserts that, in order to sustain a finding of disciplinary violations, there must be clear and convincing evidence. The hearing panel applied the "preponderance of the evidence" standard. The State correctly points out that the final agency decision found that the evidence was so clear that, even if the burden of proof is elevated to clear and convincing evidence, the State had met that burden. However, we address the issue in order to clear up any uncertainty in the law.

This court set forth the burden of proof to be applied in medical disciplinary cases in *State v. Brown*, 218 Iowa 166, 253 N.W. 836 (1934). "A preponderance of the evidence is all that is required." *Id.* at 170, 253 N.W. at 838; *see also* Iowa R.App.P. 14(f)(6). This standard is sufficient to satisfy due process. *In re Polk*, 90 N.J. 550, 567–69, 449 A.2d 7, 16 (1982).

Eaves also complains of a violation of equal protection if the standard remains "preponderance of evidence" while "convincing preponderance of the evidence" is required in attorney discipline cases. *See Committee on Professional Ethics & Conduct v. Hurd*, 375 N.W.2d 239, 246 (Iowa 1985). The State is free to deal with different professions differently without violating the equal protection guarantees established under the federal and state constitutions. *See Polk*, 90 N.J. at 569–71, 449 A.2d at 17. This is particularly true where the regulations being compared have been established by different branches of government.

### IV. *Sufficiency of Evidence.*

Finally, Eaves argues that the evidence was insufficient to support the finding that he had excessively prescribed controlled drugs. He points out that the hearing panel did not interview any of the patients involved. He urges that his care of the patients was appropriate in the circumstances.

The question is not whether evidence might support a different finding but whether there is substantial evidence to support the finding actually made. *Aluminum Co. of Am. v. Employment Appeal Bd.*, 449 N.W.2d 391, 394 (Iowa 1989). Where evidence is in conflict or reasonable minds might disagree about the conclusions to be drawn, the court is bound to accept the agency's findings. *Id.* The agency's factual findings are binding on appeal unless a contrary result is demanded as a matter of law. *Id.* Judged by this standard, we find more than adequate support for the agency's findings in the hearing record.

### V. *Summary.*

In summary, the district court's order upholding the final Board decision is affirmed. The statutes require minimal professional competency which is a standard comprehensible to all medical doctors. Thus, the statutory language is not unconstitutionally vague. The Executive Director did not impermissibly combine prosecutorial and adjudicatory functions. The Board correctly applied the preponderance-of-the-evidence standard of proof. The evidence was sufficient to support the Board's decision.

AFFIRMED.