**ALUMINUM COMPANY OF AMERICA, Appellee,**

v.

**EMPLOYMENT APPEAL BOARD, et al., Appellants.**

No. 88–1557.

Supreme Court of Iowa.

Dec. 20, 1989.

As Corrected Jan. 11, 1990.

Kent A. Simmons, Davenport, for appellant-employees.

William C. Whitten, Knoxville, for appellant-Employment Appeal Bd.

Richard A. Davidson of Lane & Waterman, Davenport, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

SNELL, Justice.

In late May and early June of 1986, the Aluminum Company of America (ALCOA) plant in Davenport was beset by labor difficulties. Contracts between ALCOA and its two unions, the Aluminum, Brick and Glass Workers (ABG) and the International Brotherhood of Electrical Workers (IBEW) were to expire simultaneously at midnight on May 31. The parties' practice with regard to negotiating new contracts had been that ALCOA negotiated with the ABG, the larger of the unions (2000 members), and after settlement extended a similar offer to the IBEW (150 members).

Prior to May 31, ALCOA and the IBEW agreed to extend the old contract on a day-to-day basis, cancelable by either party upon twenty-four-hours notice. A week later, the company and the union agreed that IBEW members who honored the ABG picket line would not be disciplined or discharged, but that the union would provide necessary coverage at the plant in the event of an emergency. At 12:01 a.m. on June 1, ABG went out on strike. IBEW members continued to work at the plant until the arrival of workers for the 3:00 p.m. shift on May 31. At that time, the company advised the workers to go home. The same thing happened when IBEW members reported for the 11:00 p.m. shift. Ultimately the period involved that is the basis for this appeal is June 1, 1986, to July 11, 1986.

The reasons for the company's decision to turn IBEW members away on May 31 form the core of this dispute. The employees argue that the company's action constituted a layoff or lockout, allowing them to collect unemployment benefits. ALCOA contends that its actions constituted neither a layoff nor a lockout, that IBEW members refused to cross the ABG's picket lines after May 31, even though they knew work was available, and that the situation resulted from a labor dispute. In this case, the

company argues, the employees are not entitled to unemployment benefits.

A deputy in the Department of Job Service disqualified the employees from receiving unemployment benefits and they appealed pursuant to Iowa Code section 96.6(2)(1985). The issues are substantially the same before this court as when the dispute went before an administrative hearing officer for the Iowa Department of Job Service in September of 1986. At that time, though, neither of the parties nor the hearing officer had benefit of this court's decision in *Alexander v. Employment Appeal Board*, 420 N.W.2d 812 (Iowa 1988), which held that unemployment resulting from a lockout did not disqualify employees from obtaining unemployment benefits under Iowa Code section 96.5(4) subject to some exceptions. *Id.* at 814. At hearing, the employees urged the hearing officer to find that the facts supported a conclusion that a layoff had occurred, and that its members were thus entitled to unemployment benefits. ALCOA urged the hearing officer to find that the IBEW's members were disqualified from receiving unemployment benefits because a labor dispute was involved. *See* Iowa Code § 96.5(4).

The hearing officer agreed with ALCOA, finding that the employer had carried its burden of proof on the disqualification issue. *See* Iowa Code § 96.6(2). The hearing officer concluded that the facts showed that employees remained away from their jobs prior to June 5, when ALCOA canceled the day-to-day extension agreement, without good cause; presumably because they refused to cross ABG's picket lines. By its cancellation of the agreement on a day-to-day employment, the hearing officer concluded that ALCOA had locked out its IBEW employees. The hearing officer ruled that the failure of IBEW members to report for work was due to a labor dispute, and because he did not have the benefit of this court's ruling in *Alexander*, denied benefits.

The Employment Appeal Board reversed the hearing officer's decision, finding instead that a layoff had occurred, and that an improper recall had been attempted by ALCOA. This conclusion, however, did not extend to three specific workers, whose cases were remanded to the Division of Job Service for further findings of fact. ALCOA appealed this administrative decision to the district court, pursuant to the Iowa Administrative Procedure Act. Iowa Code § 17A.19 (1985). By order dated May 16, 1988, the court remanded the case to the agency in its entirety for further findings, concluding that not enough evidence had been presented to determine whether or not the agency had properly applied the law. Accordingly, the court required that the parties present additional evidence "regarding what representations were made by whom to whom regarding the availability of work and other representations made by Alcoa."

Confronted with the court's order, the IBEW employees filed a motion to enlarge findings of fact and conclusions of law pursuant to Iowa Rule of Civil Procedure 179(b), based upon this court's then recent decision in *Alexander*. In essence, the motion asked that the trial court find that the events surrounding this dispute constituted a lockout and then apply the *Alexander* standards to grant benefits. 420 N.W.2d at 815. The court declined to expand its findings, concluding that, based upon the record, it "could not determine whether or not the affected workers had been laid off, locked out or were on strike." An appeal to this court followed, with the employees asking that we find that substantial evidence supports a ruling that ALCOA locked them out, and apply the *Alexander* rationale to grant benefits.

■ I. The standards that this court may apply in reviewing agency action in a contested case proceeding are well established. Iowa Code section 17A.19(8) provides that a reviewing court shall grant appropriate relief if substantial rights of the appellant have been prejudiced because the action of the agency violated constitutional or statutory provisions, exceeded its statutory authority or violated its own rules, or was made upon unlawful procedure or otherwise affected by errors of law. In addition, we must determine

whether the agency's conclusion was supported by substantial evidence when the record is viewed as a whole, or is arbitrary, capricious or characterized by abuse or unwarranted use of discretion. In reviewing the district court's decision

> [T]he sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standard of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court. If the conclusions are the same, affirmance is in order. If they are not, reversal may be required.

*Jackson County Pub. Hosp. v. Public Employment Relations Bd.*, 280 N.W.2d 426, 429–30 (Iowa 1979); *accord Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987); *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 161–62 (Iowa 1987). This court must look only to the final agency decision, and determine whether the record supports the agency's ruling when viewed in light of the seven standards contained in Iowa Code section 17A.19(8).

The company asserts that the board erred because it improperly applied the law to the facts of the case. ALCOA points to the board's assertion that there was no labor dispute as a misapplication of Iowa Code section 96.5(4), arguing that there was evidence in the record that IBEW members refused to cross ABG's picket lines. The company concludes, based upon *Deere Manufacturing Co. v. Iowa Employment Security Commission*, 249 Iowa 1066, 90 N.W.2d 750 (1958), that the board failed to consider whether refusal by members of one union to cross another union's picket lines constitutes a labor dispute. It urges that the court accept such evidence as an indication that a labor dispute existed in order to conclude that the board misapplied the law. In *Deere*, this court held that refusal by members of one union to cross picket lines because they were threatened with violence nevertheless disqualified them from benefits. *Id.* at 1076–77, 90 N.W.2d at 757–58. However, this court overruled that portion of the *Deere* deci-

sion. *Ames v. Employment Appeal Bd.*, 439 N.W.2d 669, 673–74 (Iowa 1989). Within the context of the decision when viewed as a whole, it is clear that the board concluded, based upon the facts, that a layoff had occurred, and made no finding regarding ALCOA's allegations that IBEW members refused to cross picket lines.

■ II. The task of this court is to determine whether the decision of the Employment Appeal Board finding that the events surrounding this dispute constituted a layoff was supported by substantial evidence. *Hussein v. Tama Meat Packing Co.*, 394 N.W.2d 340, 341 (Iowa 1986). If the factual findings of the board are not supported by substantial evidence we may reverse its decision.

■ The question this court must ask is not whether the evidence might support a different finding, but whether there is substantial evidence to support the finding actually made by the board. *Ward v. Department of Transp.*, 304 N.W.2d 236, 237–38 (Iowa 1981). Where the evidence is in conflict or where reasonable minds might disagree about the conclusions to be drawn from the evidence, the court is bound to accept the board's findings. *Id.* at 239. While we take all record evidence into account in our review, we must grant appropriate deference to the board's expertise. *Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n*, 401 N.W.2d 192, 195–96 (Iowa 1987). The court must broadly and liberally apply the board's findings in order to uphold rather than defeat the decision. *Ward*, 304 N.W.2d at 237. The board's factual findings are binding on appeal unless a contrary result is demanded as a matter of law. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987).

■ The evidence presented by this case is conflicting, and could lead to a variety of conclusions. When IBEW members reported for work on June 1, after the ABG set up picket lines, they were sent home by the company. The testimony is in dispute as to why the electricians were not allowed to work. The employer presented

evidence that indicates that its decision was precautionary, in view of its uncertainty as to the intentions of the ABG strikers. It also presented evidence that workers who reported for duty were paid, even though they were sent home. The employees, on the other hand, presented testimony that they were told by company representatives that no work was available and were not told they would be paid. On June 5, 1986, the same date that the company rescinded the parties' day-to-day employment agreement, the company posted signs and announced through the media that members of the IBEW were free to come to work. However, there is no evidence that the company directly informed the union or its members. The board ruled that these latter actions did not constitute recall since individual notice was not given to any union member. We find that, although a contrary ruling also could have been supported by the evidence, substantial evidence did support the board's conclusions.

■ The facts further indicated that three named employees called ALCOA on June 5, asking if work was available. They were told that work was available, but did not return. As a result, the board remanded the matter as it pertained to the three employees to the claims section, division of job service, in the Department of Employment Services for a determination of whether these three employees had refused recall. Although there is evidence in the record that bears on the situation of these three employees, no findings were made by the hearing officer or the deputy. Since no findings were ever made, the board's decision to remand in the case of these three employees was also correct.

REVERSED.