Raymond E. HENECKE,
Petitioner–Appellant,

v.

**IOWA DIVISION OF JOB SERVICE, The Employment Appeal Board and Klein Tools Inc., Respondents–Appellees.**

No. 94–364.

Court of Appeals of Iowa.

April 28, 1995.

574 ■

Kenneth F. Dolezal of Dolezal, Lindeman & Davidson, Cedar Rapids, for appellant.

Iris E. Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee employer.

William Whitten, Employment Appeal Bd., for appellee Bd.

Considered by DONIELSON, C.J., HABHAB, J., and SCHLEGEL, S.J.*

SCHLEGEL, Senior Judge.

The petitioner, Raymond Henecke, was employed by Klein Tools, Inc., in Cedar Rapids as a utility maintenance person. He repaired equipment and engaged in preventive maintenance. At the end of 1991, Henecke began working under a new supervisor, Tracy Venditti. Henecke did not like Venditti's management style, which he stated was "in your face."

On October 30, 1992, Henecke went to the then assistant plant manager, Jean Ashford, and asked to work with his previous supervisor, Bob Short. He told her the situation with Venditti was causing him stress. Ashford testified Henecke told her "If Tracy doesn't stay out of my 'F"ing face you don't want to know what I'm going to do because it won't be pretty." Ashford stated Henecke's statement and attitude scared her. Henecke also advised Ashford he was having a problem with his breathing and was on medication, but did not tell her what kind of medication.

* Senior judge from the Court of Appeals serving on this court by order of the Iowa Supreme Court.

On November 19, 1992, after Venditti made an inquiry regarding the work Henecke was doing, Henecke became agitated. He stated, "Just leave me the 'F'ing alone." And "If you don't leave me the 'F'ing alone you're going to be sorry." Henecke jabbed his fingers within about six inches of Venditti's face as he made these statements. Shortly afterward, Henecke went to Ashford's office and discussed the confrontation. Ashford testified Henecke told her "that if Tracy did not stay out of his 'F'ing face he would be 'F'ing sorry." Henecke pounded Ashford's desk during his visit to her office.

Henecke was suspended from his employment on November 20, 1992. After an investigation, he was discharged on December 17, 1992.

Henecke filed a claim for unemployment benefits. A Job Service representative denied his request on the ground that he had been discharged for misconduct. Henecke sought an administrative hearing. At the hearing, Henecke admitted he told Venditti to leave him alone or he would be sorry. He stated he was not threatening Venditti, but meant he intended to report him to company management. Henecke also stated the stress of working with Venditti had affected his physical and mental health. He reported his treating physician had determined his breathing problems were stress-related and had prescribed Xanax to help relieve stress.

The administrative law judge determined Henecke's conduct showed insubordination and threatening behavior toward management and that these actions constituted misconduct. The ALJ also determined Henecke had failed to show his actions were not voluntary due to the effects of stress and his medication. The ALJ affirmed the earlier finding that Henecke was discharged for misconduct and was not entitled to unemployment benefits.

Henecke appealed to the employment appeal board. The board affirmed the ALJ and adopted his opinion as its own. Henecke then filed a petition for judicial review. The district court determined there was substantial evidence in the record to support the board's decision and affirmed. Henecke appealed.

■ Appellate review of an agency's decision is governed by Iowa Code section 17A.20 (1993). The review is at law and not de novo. *Diggs v. Employment Appeal Board,* 478 N.W.2d 432, 433 (Iowa App.1991). The decision of the agency is final if supported by substantial evidence in the record and correct conclusions of law. *Id.* The agency decision is supported by substantial evidence in the record if a reasonable mind, viewing the record as a whole, would accept the record as adequate to reach the conclusion. *Id.* The possibility of drawing two inconsistent conclusions from the record does not prevent the agency's finding from being supported by substantial evidence. *Carpenter v. Iowa Department of Job Service,* 401 N.W.2d 242, 244 (Iowa App.1986).

■ Section 96.5(2) provides that a claimant is disqualified from unemployment benefits if the employment appeal board finds the individual has been discharged for misconduct in connection with the individual's employment. *Deever v. Hawkeye Window Cleaning, Inc.,* 447 N.W.2d 418, 419 (Iowa App.1989). Misconduct consists of deliberate acts or omissions by the employee, or such carelessness as to indicate a wrongful intent. *Carpenter,* 401 N.W.2d at 245.

■ Misconduct must be substantial in nature to support a disqualification from unemployment benefits. *Myers v. Employment Appeal Board,* 462 N.W.2d 734, 737 (Iowa App.1990). An employer has the burden of proving a claimant is disqualified for benefits because of misconduct. *Id.*

Henecke contends his actions was not sufficiently egregious to be considered misconduct. He states his actions were not deliberate due to medication and job-related stress. Henecke believes his statements, at most, showed an error in judgment.

■ We have previously held a threat constitutes a sufficient willful or wanton disregard of an employer's interest and of the standards of behavior which an employer has the right to expect of employees. *Deever,* 447 N.W.2d at 421. Threatening one's employer constitutes misconduct and warrants a disqualification from unemployment benefits.

*Id.* An employer need not wait until an employee has acted on his declared intent before the threatened conduct rises to the level of misconduct. *Myers,* 462 N.W.2d at 738.

■ We find there is substantial evidence in the record to show Henecke's statements, that Venditti should stay out of his way or he would be sorry, were threats. Henecke made these threats concerning his supervisor on three occasions. He twice threatened Venditti before Ashford, and once threatened Venditti to his face. We conclude these threats constituted misconduct.

■ Furthermore, an employer has the right to expect decency and civility from its employees. *Id.* The use of profanity or offensive language in a confrontational, disrespectful, or name-calling context may be recognized as misconduct. *Id. (overruling Budding v. Iowa Dept. of Job Service,* 337 N.W.2d 219, 222 (Iowa App.1983), which held an isolated incident of vulgar language was a minor peccadillo.)

We find there is substantial evidence to show Henecke's use of offensive language was made in a confrontational and disrespectful manner. The evidence showed Henecke raised his voice to Venditti and waived his hands in the supervisor's face. He also raised his voice to Ashford and pounded on her desk. We note there was more than a single incident in which Henecke exhibited this contumacious conduct. Henecke's actions show a refusal to interact effectively with his supervisor and constitute insubordination.

In addition, we find there is substantial evidence to support the board's conclusion that Henecke had failed to show his actions were involuntary due to the effects of medication and job-related stress. Other than the incidents involved here, Henecke was able to perform his job duties in a satisfactory manner. Also, he presented no evidence to show the effects of his medication or to show the employer knew he was taking this medication.

■ We find there is sufficient evidence in the record taken as a whole to support the decision of the employment appeal board.

We affirm the decision of the district court and the board.

**AFFIRMED.**