**IN THE COURT OF APPEALS OF IOWA**

No. 21-0036
Filed January 12, 2022


**VINCENT MICHAEL KOBLISKA,**
    Plaintiff-Appellant,

**vs.**

**IOWA CIVIL RIGHTS COMMISSION,**
    Defendant-Appellee.
_____


    Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.


    A landlord appeals from a district court ruling that affirmed an agency finding of discrimination against a tenant. **AFFIRMED.**


    Gary Papenheim of Papenheim Law Office, Parkersburg, for appellant.

    Thomas J. Miller, Attorney General, and Katie Fiala, Assistant Attorney General, Des Moines, for appellee.


    Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Vincent Kobliska appeals the district court ruling affirming the Iowa Civil Rights Commission's (ICRC) finding he discriminated against his tenant by refusing to accommodate her need for an assistance animal. He alleges there is not substantial evidence to support the ICRC's decision.[1] We find there is substantial evidence in the record to support the agency's decision. Accordingly, we affirm.

## I. Background Facts & Proceedings

Kobliska owns several apartment properties in Waterloo. He has been a property owner for about thirty years and specializes in high-efficiency sleeping rooms. Due in part to his focus on high-density housing, he has a no-pets policy. An exception exists for service animals, such as seeing-eye and hearing dogs.

Jennifer Spencer suffers from post-traumatic stress disorder (PTSD), a non-epileptic seizure disorder, anxiety, and depression. She was given Journey, a fifteen pound Pomeranian, for Christmas in 2016 by Teresa Perkins. Initially, the dog was not meant to be a service animal, but Spencer came to find the dog helpful in managing her emotions and keeping her on a medication schedule. Journey wakes Spencer when her alarm goes off. The dog also helps her recover from seizures. Journey assists Spencer with panic attacks. Spencer obtained several letters from various medical professionals recommending she have a service animal.[2]

---

[1] Kobliska does not specifically challenge the amount of damages assessed.
[2] Five exhibits were admitted that purported to be medical documentation recommending a service animal or designating Journey as a service animal. The

In the spring of 2017, Spencer planned to move to Waterloo to be closer to her children. She initially planned to buy a trailer, but struggled to find one. As a result, she looked at two apartments owned by Kobliska with the intent to rent an apartment for a short time until she could purchase a trailer. She signed a lease with Kobliska on May 5, 2017.

There is significant disagreement surrounding the circumstances of the lease signing. Spencer alleges that she informed Kobliska she had a service animal. After telling him, Spencer alleges Kobliska was adamant that there was a no-pets policy despite Spencer informing him that Journey was a medical necessity. He also told her that it was disappointing she had not informed him earlier because it wasted both of their time to show her the apartments. Due to her urgent need to find housing—she was living in hotels and her car at the time—she agreed to have Journey stay with Perkins. She testified that she only agreed to the arrangement because she believed she could not rent the apartment with Journey. She paid her security deposit and rent that day, after which Kobliska gave her a receipt with the words "no pets" written on it and underlined.

Kobliska's version of events differs. According to him, he never said anything to Spencer when she informed him about Journey. Kobliska's version reflects that after a brief period of silence, Spencer and Perkins worked out a plan where Perkins would take the dog and Spencer would see how she could manage

---

first is an unsigned and undated letter by Jeanne Anderson, who passed away before the events at issue on appeal. There are three letters dated after the events at issue, from May 16, August 25, and September 1, 2017. The only letter that predates the lease signing that is definitively dated is from April 7, 2017, written by Ellen Folkers-Jenkins, CADC.

without it.  Therefore, according to Kobliska, he never refused to allow Spencer to have Journey with her in the apartment.

Journey spent three days living with Perkins.  Spencer testified that she was an emotional wreck for those three days and quickly fell off her medication schedule.  She suffered a seizure on her third day without Journey.  Perkins brought the dog back to Spencer that day.  Spencer attested that her symptoms improved once Journey returned.  She moved to a different property Kobliska owned a few days later.  The terms of her new lease were identical to the terms of her old lease.

After moving to the second apartment, Spencer recorded a conversation between Kobliska and herself.  During the conversation, Spencer again raised the issue of Journey living with her.  Several details stand out.  First, Kobliska indicates that while the lease allows service animals, it is limited to pets that assist in sight and hearing and is always subject to his approval, which he never gave.  Kobliska also points out many residents had asked about bringing their own pets because Journey was living with Spencer.  Ultimately, Kobliska is adamant that he was not telling Spencer she could not have Journey, and that she should "do what the hell [she] please."  Kobliska never evicted Spencer.  She moved out in June, and Kobliska returned her full security deposit.

The ICRC brought an action against Kobliska based on his refusal to accommodate Spencer's need for a service animal for the three days she was without Journey.  A trial was held in August 2019.  The administrative law judge (ALJ) issued a proposed decision finding Kobliska had failed to reasonably

accommodate Spencer's request and awarded Spencer $5000 compensation for emotional distress and ordered Kobliska to participate in two hours of anti-discrimination training at his own expense. Kobliska was also ordered to implement written standards for receiving and handling requests made by people with disabilities for reasonable accommodation. The ICRC adopted the ALJ's decision. On appeal, the district court affirmed the ICRC's decision. Kobliska appeals.

## II. Standard of Review

Judicial review of an agency decision is controlled by the provisions of Iowa Code section 17A.19(10) (2019). *Renda v. Iowa Civ. Rts. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). "We will apply the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Id.* The court may grant relief if the agency decision "prejudiced the substantial rights of the petitioner and if the agency action meets one of the enumerated criteria contained in section 17A.19(10)(a) through (n)." *Id.* The burden of showing the agency erred is on the party asserting the error. *Simon Seeding & Sod, Inc. v. Dubuque Hum. Rts. Comm'n*, 895 N.W.2d 446, 455 (Iowa 2017).

"[O]ur standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review." *Id.* (alteration in original) (quoting *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012)). Kobliska alleges the ICRC decision was not supported by substantial evidence in the record. *See* Iowa Code § 17A.19(10)(f). Substantial evidence "means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and

reasonable person, to establish the fact at issue." Iowa Code § 17A.19(10)(f)(1). We review "all the relevant evidence in the record cited by any party that detracts from the finding as well as all of the relevant evidence in the record cited by any party that supports it." *Id.* § (10)(f)(3). We also may consider "any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses." *Id.*

In determining if there is substantial evidence to support the agency finding,

> The question this court must ask is not whether the evidence might support a different finding, but whether there is substantial evidence to support the finding actually made by the board. Where the evidence is in conflict or where reasonable minds might disagree about the conclusions to be drawn from the evidence, the court is bound to accept the board's findings. While we take all record evidence into account in our review, we must grant appropriate deference to the board's expertise. The court must broadly and liberally apply the board's findings in order to uphold rather than defeat the decision. The board's factual findings are binding on appeal unless a contrary result is demanded as a matter of law.

*Aluminum Co. of America v. Emp. Appeal Bd.*, 449 N.W.2d 391, 394 (Iowa 1989) (citations omitted).

## III. Discussion

The ICRC found that Kobliska discriminated against Spencer in violation of Iowa Code section 216.8A(3)(c)(2), which prohibits the "refusal to make reasonable accommodations in rules, policies, practices, or services, when the accommodations are necessary to afford the person equal opportunity to use and enjoy a dwelling." The plaintiff bears the burden of proving each of the elements required for a reasonable accommodation cause of action: (1) the complainant is disabled within the meaning of the act; (2) the defendant knew or should

reasonably have been expected to know of the disability; (3) the accommodation is necessary to afford the complainant the equal opportunity to use and enjoy the dwelling; (4) the requested accommodation is reasonable; and (5) the defendant refused the requested accommodation. *State, ex rel. Henderson v. Des Moines Mun. Hous. Agency*, No. 09-1905, 2010 WL 4484005, at \*5-6 (Iowa Ct. App. Nov. 10, 2010). Kobliska challenges the ICRC's findings on each prong.

### A. Disability

First, Kobliska argues that Spencer failed to establish her disability. A disability is (1) "a physical or mental impairment which substantially limits one or more major life activities" or (2) someone who "has a record of such an impairment, or (3) is regarded as having such an impairment." *Id.* at \*6. A physical or mental impairment includes "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." *Id.* at \*7 (alteration in original). A major life activity includes, but is not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Iowa Admin. Code r. 161-8.26(3). The ICRC and both parties focused on the major life activities prong. We follow the same focus.

Kobliska cites *Henderson* for the proposition that the complainant must produce documentation to establish they are disabled.[3] He alleges that Spencer

---

[3] *Henderson* does state that it was "not one in which the information provided by the resident is so lacking in detail as to be insufficient as a matter of law." 2010 WL 4484005, at \*7. However, it is not clear that it imposes an absolute duty to bring certain documentation to establish a disability, particularly when the complainant is not relying on the "record of such impairment" method of demonstrating a disability. *Id.* at \*6. In any event, Spencer did have documentation.

failed to do so and therefore was not disabled within the meaning of the law. However, the record does not support Kobliska's argument. Spencer testified that she suffers from PTSD, which was diagnosed eight or nine years prior to the trial. She was diagnosed with a seizure disorder in 2012. She also suffers from anxiety and depression. She took multiple forms of medication to treat each of those illnesses. She had at least one letter at the time of the events at issue indicating she suffered from PTSD, which we have recognized as a disability. *See Henderson*, 2010 WL 4484005, at *7. A reasonable fact finder could also find the unsigned letter written by Anderson supported Spencer's contentions. There is substantial evidence that Spencer suffered from physical or mental impairments.[4]

There is also substantial evidence that Spencer's PTSD, seizures, anxiety, and depression interfere with major life activities. Spencer testified that her PTSD causes her to feel unsafe and unsecure. She cannot be around groups of people and avoids her own friends and family due to her illness. Her struggles to feel safe make it difficult for her to sleep. Between her anxiety and seizures, she cannot drive or maintain a job. Her illnesses also make it difficult for her to care for herself—she testified that when she gets off her medication schedule she struggles to eat, hydrate, sleep, or perform basic self-care. There is substantial evidence to support the ICRC's finding that Spencer is disabled within the meaning of the law.

---

[4] Spencer had three additional letters dated just after the events at issue on appeal, from May 16, August 25, and September 1, which all indicate she suffers from depression, anxiety, PTSD, and a seizure disorder. Due to the date being after the events in question, these documents are not beneficial to Spencer's claims.

**B. Defendant Knew or Should Have Known of Disability**

Kobliska argues that Spencer should have the burden of presenting documentation to him establishing her disability to impute knowledge of her disability. Both parties agree that no documentation was ever shown to Kobliska, although there is a dispute over whether she had the documents in her car when signing the lease. Kobliska asserts absent Spencer showing him documentation establishing her disability, he did not know and could not be reasonably expected to know that Spencer was disabled. He argues that he should have been given a reasonable period to investigate her claims and make a decision regarding the requested accommodation.

Assuming Kobliska is correct in claiming Spencer bears the burden of presenting documentation and that he should be given some period to investigate, the record still supports the conclusion that he knew she was disabled. Both Spencer, Perkins, and Kobliska testified Spencer told Kobliska about her disabilities just before signing the lease. According to Perkins and Spencer—who the ALJ found more credible than Kobliska—he responded by adamantly refusing to allow any service animals. In response to Spencer offering to show him her documents in support of her need for a service animal, Kobliska merely responded "sorry." His firm stance on the issue is reflected on the receipt that he gave Spencer after she signed the lease, which has "no pets" written on it and underlined twice. The recorded conversation indicates Kobliska believed he need only accommodate dogs that assist with hearing and sight.

Kobliska cannot escape liability by claiming Spencer failed to show him documentation when he categorically refused to view it. This is not a case in which Kobliska would have granted the accommodation if Spencer had only shown him the right form; he believed that Spencer's disability was not one that he must accommodate. Moreover, Kobliska never suggests that Spencer did not inform him of her disability and never indicates that he did not believe her sincerity when she informed him at the lease signing. Kobliska's claim that he should be given a reasonable time to investigate Spencer's claim is similarly defeated by the fact that he categorically refused to consider her claim.

Kobliska also argues that he could not have known of Spencer's disability because three of her five documents offered at trial were dated after the lease was signed. However, that argument ignores the two other documents available to him indicating Spencer was disabled. And again, he refused to look at any of the documents or consider an accommodation. There is substantial evidence Kobliska knew Spencer was disabled.

## C. Accommodation is Necessary

Kobliska next argues that there is insufficient evidence Journey is necessary for Spencer to use and enjoy the apartment. Necessary accommodations are those that "affirmatively enhance a disabled plaintiff's quality of life by ameliorating *the effects* of the disability." *Id.* at *9 (citation omitted). Our case law has indicated that support animals may be necessary accommodations. *Id.*

Spencer testified that Journey helps her stay on track with her seizure medication by waking her up when her alarm goes off. Journey assists Spencer in her recovery from her from her seizures quicker than she would without Journey. Journey also provides emotional support. Spencer testified that it was "a nightmare" without Journey, causing her to "[cry] all the time," miss medication, and have trouble managing her sleep schedule. After Journey's return, she got back into her routine—eating, sleeping, and hydrating, all of which help prevent her seizures. She took her medications on time and was less anxious. There is substantial evidence Journey is a necessary accommodation.

### D. Accommodation is Reasonable

Kobliska contends that allowing Spencer to keep Journey in the apartment was not a reasonable accommodation. He points out that no-pet policies are common for landlords because pets cause damage. He alleged that multiple other tenants wanted to bring in pets once they saw Spencer had one, suggesting that by allowing her the accommodation he would have to grant them for everyone. He also argues that allowing Spencer's five children, two dogs, which included Journey and a Great Dane, a cat, and several kittens is unreasonable given the size and density of the apartment property.

There is substantial evidence supporting the ICRC's finding that the requested accommodation was reasonable. We note first that Spencer's children, the second dog, and cats are not relevant to the analysis of reasonableness for the accommodation because Spencer's requested accommodation was for Journey alone. Kobliska was under no obligation to allow the other pets that did

not serve as support animals. Second, Kobliska obtains security deposits from all tenants, including Spencer. Funds from the security deposit were available for any damages caused by Journey. Third, he was under no obligation to grant the requests of the other tenants if they did not qualify for an accommodation under the law. Finally, Kobliska testified he has allowed two other tenants to keep service animals in the past. His prior acceptance of service animals indicate it would be a reasonable accommodation to allow them.

### E. Defendant Refused to Make the Requested Accommodation

Kobliska's final argument is that he never refused to make the accommodation Spencer requested. In particular, he alleges that when Spencer told him she needed Journey, he responded with silence. After a period of silence, Spencer and Perkins voluntarily agreed to have Perkins take Journey while Spencer would try to get by without Journey. This version of events contrasts with Spencer and Perkins's testimony, who allege Kobliska was clear that he would not waiver from his no-pets policy.

We find substantial evidence Kobliska refused to grant Spencer's requested accommodation. First, the ALJ found Spencer and Perkins's version of events more credible. Spencer testified that she only had Perkins take Journey because she felt she needed to do so in order to obtain housing. The recording of the conversation between Kobliska and Spencer reflects Kobliska's refusal to allow the dog when the lease was signed. For instance, after Spencer claimed the lease allowed service animals, Kobliska noted that it was limited to "blind and hearing" dogs and conditioned on whether "it's okay with [him] and it wasn't." The two

receipts Kobliska gave Spencer after paying rent both have "no pets" written on them and underlined twice.

Kobliska's insistence that he assumed Spencer would take Journey back eventually does not change the fact that he refused to make the accommodation. In fact, his testimony reveals that he assumed Spencer would take Journey back not because of their agreement, but because "anybody else that bring in pets they just go ahead and they do it." There is substantial evidence in the record to support the ICRC's finding that Kobliska refused to grant the reasonable accommodation.

## IV. Conclusion

Substantial evidence supports the ICRC's decision finding Kobliska refused to grant Spencer's request for a reasonable and necessary accommodation. As such, we affirm the agency decision that found Kobliska violated Iowa Code section 216.8A(3)(c)(2).

**AFFIRMED.**